UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DONALD MAC PHERSON,

                Plaintiffs,

- against -

STATE STREET BANK AND TRUST
COMPANY, as Trustee

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM & ORDER**
05 Civ. 2960 (DRH) (JO)

**APPEARANCES :**

**IRWIN POPKIN, ESQ.**
Attorney for Plaintiff
1138 William Floyd Parkway
Shirley, New York 11967

**SHAPIRO & DiCARO, LLP**
Attorneys for Defendant
250 Mile Crossing Boulevard, Suite One
Rochester, New York 14624
By: Robert S. Leni, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Donald Mac Pherson ("Plaintiff" or "Mac Pherson") brought the present suit after the foreclosure of his property by Defendant State Street Bank and Trust Company ("Defendant" or "State Street"). Plaintiff asserts that he was not served with proper notice prior to the foreclosure and, thereby, was deprived of his Fourteenth Amendment right to Due Process. Defendant moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(c) on the ground that this Court lacks subject matter jurisdiction according to the *Rooker-Feldman* doctrine, which proscribes federal district courts from hearing cases that

-1-

that amount to appeals of state court proceedings, or, alternatively according to the doctrine of *res judicata*. Plaintiff counter-moves for summary judgment. For the reasons set forth herein, the Court GRANTS Defendant's motion.

*BACKGROUND*

The following summary of facts is drawn from the Amended Complaint and the affidavits and evidence submitted by the parties with regard to the present motion.

On April 24, 2000, Dortha Coakley ("Coakley") secured her purchase of 230 South Magee Street, Southampton, New York ("230 South Magee") when she executed a purchase money mortgage, with the mortgagee being IndyMac Mortgage Holdings, Inc. Six days later, on April 30, 2000, the mortgage was assigned to Defendant. Defendant is a corporation with its principal place of business in Vernon Hills, Illinois.

By deed dated May 1, 2000, and filed July 19, 2000, Coakley conveyed her full interest in the property by deed to Plaintiff. (*See* Aff. of Robert S. Leni, dated Oct. 10, 2005 ("Leni Aff."), Ex. B.) Due to a default in payment for the monthly installment due January 1, 2001, and for each subsequent monthly payment thereafter n May 21, 2001, Defendant commenced an action in the Supreme Court of the State of New York in and for the County of Suffolk ("state trial court") before the Honorable Robert A. Lifson. Defendant sought to foreclosure on the mortgage and secure 230 South Magee.

Defendant made efforts to personally serve Plaintiff, but represented to the state trial court, through an affirmation of its attorney John A. DiCaro, Esq. ("DiCaro"), that it had been unable to personally serve Plaintiff. As a result, Defendant requested to serve notice via publication, and the state trial court granted the request. (Leni Aff., Ex. D.) According to

Plaintiff, DiCaro misrepresented his efforts to the state trial court because Plaintiff was then residing at the same street address that was indicated on the May 1, 2000 deed. (*See* Am. Compl. ¶ 7.)

On June 19, 2003, a judgment of foreclosure and sale was made. (*See* Leni Aff., Ex. E.) Plaintiff had not appeared. On February 24, 2004, however, Plaintiff submitted an Order to Show Cause in the state trial court, pursuant to New York CPLR 5015(4) to vacate and set aside the judgment of foreclosure and sale on the grounds that the state trial court lacked personal jurisdiction over Plaintiff due to the lack of proper notice. One month later, on March 25, 2004, the state trial court denied the motion to vacate "without prejudice to the right of either named defendant [*i.e.*, Mac Pherson or Coakley] to redeem by payment of any amounts due pursuant to the judgment of foreclosure . . . .on or prior to May 1, 2004." (*See* Leni Aff., Ex. F.) The court held not only that "service by publication can be sufficient to confer personal jurisdiction," but also that "the moving papers [were] utterly devoid of any assertion of a meritorious defense by one possessed of personal knowledge." (*Id.*) The property was conveyed to Defendant on May 12, 2004 by the referee named in the foreclosure action.

Almost two weeks prior to the conveyance, on April 30, 2004, Plaintiff filed a Notice of Appeal with the Appellate Division, Second Department. Plaintiff argued that DiCaro had misrepresented the diligence of his efforts to the state trial court, and contended that the determination by the state trial court to allow service by publication did not "satisfy 'due process' mandates" because Defendant had not established that "all reasonable efforts to locate and personally serve had been made." (*See* Affirm. of Irwin Popkin, dated Nov. 14, 2005, Ex. B, Mac Pherson Aff. (hereinafter "Mac Pherson Aff.") ¶ 8.) Plaintiff's attorney affirmed to the

Appellate Division his belief that the service by publication ratified by the state trial court violated *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950). (*See* Affirm. of Irwin Popkin, dated Nov. 14, 2005, Ex. B, Popkin Aff. (hereinafter "Popkin Aff.") ¶ 8.)

By Decision and Order dated March 7, 2005, the Appellate Division affirmed the state trial court's decision. The court first noted that "[a]lthough the impracticability standard is not capable of easy definition, it does not require the applicant to satisfy the more stringent standard of 'due diligence' under CPLR § 308(4), or to make a showing that actual prior attempts to serve a party under each and every method provided in the statute have been undertaken." *State Street Bank and Trust Co. v. Coakley*, 790 N.Y.S.2d 412 (2d Dep't 2005). The court then held that "[c]ontrary to [Mac Pherson's] contention, the Supreme Court providently exercised its discretion in directing an alternative method for service of process upon him. Under the circumstances, the Supreme Court reasonably concluded that service pursuant to the other relevant sections of CPLR § 308 was impracticable." *Id.* By Decision and Order dated June 7, 2005, the New York Court of Appeals dismissed Plaintiff's motion for leave to appeal on the grounds that the order from which Plaintiff was appealing did not finally determine the action within the meaning of the New York Constitution.

Plaintiff subsequently brought suit in federal court, asserting three claims against Defendant. As to Count One, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleged that "[s]ervice by publication alone is constitutionally defective" (Am. Compl. ¶ 23) and that, as a result, Defendant had "deprived Mac Pherson of his property without due process of law." (*Id*. ¶ 24.) Count Two alleged that Defendant's actions had been "deceptive acts and practices," in violation of New York General Business Law § 349. Count III simply requested entry of an

order declaring that Plaintiff had title to 230 South Magee "in fee and is entitled to the possession of the real property." (*Id.* ¶ 35.) Defendant subsequently moved for judgment on the pleadings on the grounds that this Court lacked subject matter jurisdiction over the proceedings. Plaintiff opposed the motion and submitted a counter-motion for summary judgment demanding entry of the above-requested order.

*STANDARD*

Defendant moves for judgment on the pleadings pursuant to Rule 12(c), seeking to dismiss the complaint for lack of subject matter jurisdiction. Although subject matter jurisdiction is usually challenged by way of a Rule 12(b)(1) motion to dismiss, it may also be raised on a Rule 12(c) motion for judgment on the pleadings. *See Scaglione v. Chappaqua Central Sch. Dist.*, 209 F. Supp.2d 311, 312 (S.D.N.Y. 2002); *Peters v. Timespan Comm., Inc.*, No. 97 CIV. 8750 (DC), 1999 WL 135231, at *3 (S.D.N.Y. Mar. 12, 1999). A Rule 12(c) motion for judgment on the pleadings based upon a lack of subject matter jurisdiction is treated as a Rule 12(b)(1) motion to dismiss the complaint. *Weisman v. Internal Revenue Serv.*, 972 F. Supp. 185, 186-87 (S.D.N.Y. 1997).

"A case is properly dismissed for lack of subject matter jurisdiction under [Rule] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006). In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. A district court may consider evidence outside the pleadings when resolving a challenge to the court's subject matter

jurisdiction. *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998); *see also Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 255 n.30 (2d Cir. 2003).

*DISCUSSION*

Defendant moves for judgment on the pleadings, dismissing this action for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, because Plaintiff's "express purpose" is to "overturn the state court judgment and, in fact the plaintiff is specifically attempting to evade the results there from." (Def.'s Mem. at 2.) Plaintiff counters that he "is not asking this Court to review or reject the prior state court foreclosure judgment, but rather to focus on the constitutional infirmities inherent in New York CPLR 308(5), the law that allows a New York judge to determine any alternative manner of service whenever service is otherwise impracticable." (Pl.'s Opp'n Mem. at 4.)

*Rooker-Feldman* establishes the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine grew out of two United States Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Taken together, *Rooker* and *Feldman* stand for the proposition that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring); *accord Asarco Inc. v. Kadish,* 490 U.S. 605, 622 (1989) ("The *Rooker-Feldman* doctrine interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in this Court.").

The Supreme Court recently narrowed the doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), holding that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284; *see also Hoblock,* 422 F.3d at 85.[1]

According to the Second Circuit's definitive articulation of *Rooker-Feldman*, the *Hoblock* opinion, courts must make four determinations before applying the doctrine. First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced," *i.e.*, *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. *Hoblock*, 422 F.3d at 85. The first and fourth requirements are "procedural"; the second and third are "substantive." *Id.* If each of the above requirements is met, the case is barred by *Rooker-Feldman*.

---

[1] *Exxon Mobil* explicitly abbrogated *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195 (2d Cir. 1996). *Moccio* improperly articulated the *Rooker-Feldman* doctrine as essentially co-extensive with the doctrines of *res judicata* and collateral estoppel. *See* 95 F.3d at 199; *id.* at 199-200 ("We agree that the Supreme Court's use of 'inextricably intertwined' [in *Feldman*] means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the Rooker-Feldman doctrine if it would be barred under the principles of preclusion."). Though the ultimate outcome is generally identical, *Exxon Mobil* clarified that *Rooker-Feldman* is a jurisdictional doctrine, whereas *res judicata* and collateral estoppel are not. *See Exxon Mobil*, 544 U.S. at 293 ("Preclusion, of course, is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c) (listing *res judicata* as an affirmative defense).").

Plaintiff lost in state court, satisfying the first factor, and this action was commenced after the completion of the state court proceedings, satisfying the fourth factor. Plaintiff clearly invites this Court to review and reject of the state court judgment. In his Amended Complaint, Plaintiff explicitly requests an order overturning the state court's June 19, 2003 Judgment of Foreclosure and Sale when he requests an order granting him title and possession of the real property at issue. (*See* Am. Compl. ¶ 35.) Furthermore, Plaintiff implicitly, though necessarily, requests an order overturning the state court's March 25, 2004, denial of Plaintiff's Order to Show Cause and Motion to Vacate. Thus, the arguments and relief requested before this Court are precisely the arguments raised by Plaintiff in his Order to Show Cause before the state trial court. As a result, the third requirement for application of the *Rooker-Feldman* doctrine is met.. Therefore, factors one, three, and four have been met, and only the second factor requires some elaboration.

As to the second requirement, the Court must determine whether the injury complained of by Plaintiff was caused by a state court judgment. The alleged injury is the deprivation of property without due process of law. (Am. Compl. ¶¶ 20-26.) That much is clear. The alleged *cause* of the injury, however, is regrettably vague. Depending upon the argument he hopes to maintain, Plaintiff variously contends that he was deprived of his due process rights as a result of (1) the state court's opinion (*see id.* ¶ 25; Pl.'s Opp'n Mem. at 6); or (2) the state court's application of an unconstitutional statute (*see* Pl.'s Opp'n Mem. at 4; Pl.'s Opp'n Mem. at 13); or (3) Defendant's misrepresentations to the state trial court. The Court considers each possibly-alleged injury in turn.

A.  *State Court's Judgment*

At some points, the alleged cause of the injury is the unconstitutional service ratified by the state court. (*Id.* ¶ 25 (alleging that Plaintiff was deprived of due process as a result of the unconstitutional method of service being "ratified, acquiesced in, sanctioned and approved by the highest court in the State of New York."); Pl.'s Opp'n Mem. at 6 ("The state court's allowing the foreclosure judgment to stand constitute an acquiescence in and ratification of the intentional wrongful conduct complained of and permitted such conduct to go unpunished.").) To the extent that Plaintiff is complaining that the state court's judgment caused the injury, this Court clearly lacks jurisdiction pursuant to the classic articulation of the *Rooker-Feldman* doctrine: *Rooker-Feldman* prohibits "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284; *see also Hoblock,* 422 F.3d at 85.

B.  *State Court's Application of an Unconstitutional Statute*

Plaintiff alternatively argues that he is ultimately concerned with the "constitutional infirmities in New York CPLR 308(5)" (Pl.'s Opp'n Mem. at 4), suggesting that the statute itself is the cause of the injury.[2] (*Id.* at 13 (arguing, in support his own motion for summary judgment, that CPLR 308(5) is unconstitutional both facially and as applied).) This appears to be the actual

---

[2]308(5) of the CPLR authorizes service "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one [personal service], two [mail service] and four [affixing service to door of residence] of this section." N.Y. CPLR § 308(5). The state trial court exercised this authority to authorize notice by publication.

injury complained of by Plaintiff, as he trains his arguments and citations to case law on the argument that "CPLR § 308(5) runs afoul of the constitutional protections . . . ." (*Id.* at 4.)

To the extent that Plaintiff is seeking review of a state court proceeding that applied an unconstitutional state statute, Plaintiff's suit is also barred by *Rooker-Feldman*. When he alludes to the unconstitutionality of § 308(5), he is basically appealing a prior state court ruling. Indeed, in his papers filed with the Appellate Division, Plaintiff's attorney affirmed to the Appellate Division his belief that the service by publication ratified by the state trial court violated *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950). (*See* Popkin Aff. ¶ 8.) If the injury is the state court's application of an unconstitutional statute, Plaintiff's claim is essentially a de facto appeal of a prior state court ruling and is prohibited by *Rooker-Feldman*. *See Exxon Mobil*, 544 U.S. 280, 287 (2005); *Howlett v. Rose*, 496 U.S. 356, 369-70, n.16 (1990) (citing *Rooker* and *Feldman* for "the rule that a federal district court cannot entertain an original action alleging that a state court violated the Constitution by giving effect to an unconstitutional state statute"); *Rooker*, 263 U.S. at 415 ("If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction."); *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003); *Fastag v. Kelly*, No. 04 Civ. 9037 (SAS), 2005 WL 1705529, *3 (S.D.N.Y. July 19, 2005).

C.   *Defendant's Misrepresentations*

Plaintiff sometimes asserts that Defendant's actions were actual cause of the injury. (*See, e.g.,* Am. Compl. ¶ 25 ("State Street deprived Mac Pherson of his property under the color of the aforementioned state statute and such deprivation of Mac Pherson's property becomes the

equivalent to a state action . . . ."); Pl.'s Opp'n Mem. at 5; *id.* at 6 ("The damages suffered by Mac Pherson . . . are not as a result of the state-court judgment, but the direct result of the actions of Di Caro and State Street to obtain a foreclosure judgment without regard to the fundamental 'due process' protections . . . .").) At these moments, Plaintiff asserts that the injury was caused not by the state court's ratification of the notice procedure nor by the unconstitutional statute, but rather by Defendant's misrepresentations and accompanying manipulation and misuse of the New York statute. (*See* Am. Compl. ¶ 24 ("New York CPLR § 308(5) was utilized by State Street and its attorneys in a manner which deprived Mac Pherson of his property without due process of law, in violation of his rights as guaranteed to him by the United States Constitution.").) Defendant's argue that if the alleged cause of the injury is Defendant's misrepresentations, it should be dismissed because the claim is "inextricably intertwined" with the state court judgment.

After *Exxon Mobil*, the "inextricably intertwined" analysis from *Moccio* should not be read as an expansion of the *Rooker-Feldman* doctrine. Rather, as the Second Circuit iterated in *Hoblock*, "the phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*." *Hoblock*, 422 F.3d at 87. That being the case, it would appear that Plaintiff's argument that his injury was caused by Defendant's misrepresentations in procuring the state court judgment would avoid the *Rooker-Feldman* doctrine. *See Goddard v. Citibank, NA*, No. 04 Civ. 5317 (NGG), 2006 WL 842925, at *6 (E.D.N.Y. Mar. 27, 2006) ("While the Plaintiff's remaining claims deny a legal conclusion reached by a state court, her claims are of the type held by the Court in *Exxon Mobil* to be independent from the state court judgment, because they allege fraud in the

procurement of the judgment, independent from the barred claim that the state court issued an incorrect decision regarding the law or the evidence presented to it."). Accordingly, if the alleged cause of Plaintiff's injury is Defendant's misrepresentations, this Court seemingly has subject-matter jurisdiction over the claim.

That being said, if the Court does have subject-matter jurisdiction over the claim based upon the cause of the injury being Defendant's misrepresentation, the Court must dismiss the claim pursuant to the principle of *res judicata*. (*See* Def.'s Mem. at 4.) *Res judicata* is a proper basis for dismissal under Rule 12(c). *See Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (affirming dismissal pursuant to Rule 12(c) on *res judicata* grounds).

The doctrine of *res judicata* bars a party from asserting claims that either (i) are duplicative of the claims between the parties that were previously decided on the merits, or (ii) claims that arise out of the same facts as claims between the same parties that were previously decided on the merits. *See Northern Assur. Co. of Am. v. Square D. Co.,* 201 F.3d 84, 87 (2d Cir. 2000). "Whatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata*." *Berlitz Schools of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980). Thus, *res judicata* not only bars parties from relitigating the same cause of action, but also "prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised." *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985); *see also Perez v. Danbury Hosp.* 347 F.3d 419, 426 (2d Cir. 2003) ("*Res judicata* precludes parties from litigating issues that were or could have been raised in a prior proceeding.") (internal quotation

marks and citations omitted); *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir.2000); *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 87-88 (2d Cir. 1999).

To determine whether *res judicata* applies to preclude later litigation, a court must find that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir.2001); *see also Fogel v. Secretary of Air Force*, 351 F. Supp. 2d 47, 50 (E.D.N.Y. 2005).

There is little dispute regarding the first two elements: there was a final judgment on the merits in the state court proceedings and that the state court proceedings involved both of these parties. The decisive element is the third, *i.e.*, whether the claims asserted in the subsequent action were, or could have been, raised in the prior action.

The state court proceedings did not explicitly reference § 1983. Nevertheless, the Second Circuit applies a transactional analysis to determine whether there is sufficient identity of issues to justify the dismissal of the subsequent claim on the grounds that it could have been raised in the prior action. *See Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38-39 (2d Cir. 1992). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Id.* at 38. It is this identity of facts surrounding the occurrence that constitutes the cause of action, not the legal theory upon which the plaintiff chooses to frame his complaint. *See id.* at 39.

Plaintiff's claims in the present action are identical to those raised and decided in the state trial court's determination of the merits of Plaintiff's Order to Show Cause and Motion to Vacate. In his case before the Appellate Division, Plaintiff referenced the alleged misrepresentations by DiCaro as depriving him of "due process." (Mac Pherson Aff. ¶ 8.) The factual predicate of Plaintiff's present complaint is precisely the factual predicate raised as violations of "due process" before the state trial court and the Appellate Division. Because it is precisely the same set of facts found inadequate in the prior suit, the state trial court's denial of the Order to Show Cause and Motion to Vacate is a final decision for *res judicata* purposes. *See United States v. McGann*, 951 F. Supp. 372, 382-83 (E.D.N.Y. 1997). Additionally, there is nothing substantively different about Plaintiff's complaint in the present case other than his reliance on a new legal theory, *i.e.* his invocation of § 1983. New legal theories do not amount to a new cause action so as to defeat *res judicata*. *See Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 638 (2d Cir. 1989); *see also In re Teltronics Services, Inc.*, 762 F.2d 185, 193 (2d Cir. 1985) ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata*.").

All of the allegations that form the crux of Plaintiff's complaint were identical to the facts before the state trial court and Appellate Division. As such, the claims asserted in the present action were, or could have been, raised in the prior action and are precluded by *res judicata*. *See Pike*, 266 F.3d at 91; *see also Fogel*, 351 F. Supp. 2d at 50. Accordingly, the Court grants Defendant's motion to dismiss.

## *CONCLUSION*

In sum, Plaintiff's suit is barred by either the *Rooker-Feldman* doctrine or, alternatively, *res judicata*. Accordingly, Defendant's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.  
       September 20, 2006

/s/  
Denis R. Hurley  
United States Senior District Judge